**AFFIRM in Part, REVERSE in Part, and REMAND; and Opinion Filed March 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01230-CV

**ALLEN IVERSON, Appellant**

V.

**DOLCE MARKETING GROUP AND DG1 ENT, LLC, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-06058**

## MEMORANDUM OPINION

Before Justices Moseley, Lang, and Brown
Opinion by Justice Brown

Allen Iverson appeals a post-answer default judgment in favor of appellees Dolce Marketing Group and DG1 Ent, LLC. Appellees sued Iverson for breach of contract and fraud after Iverson allegedly failed to show up for a paid appearance. Iverson filed a pro se answer, but failed to appear at trial. The trial court rendered a default judgment against him in the amount of $495,058.29, plus attorney's fees and court costs. On appeal, Iverson contends, among other things, that the evidence is legally insufficient to support the default judgment. We agree and reverse the trial court's default judgment against Iverson.

In their original petition filed in May 2010, appellees contended they entered into a written contract with Iverson, a professional basketball player, negotiated through and signed by his agent, Gary Moore. The alleged contract required Iverson to appear for two hours at a party

on the weekend of the 2010 NBA All-Star Game, held in Dallas. Iverson's representatives allegedly cancelled immediately before the event. Appellees alleged Iverson breached the contract by failing to appear and also fraudulently induced appellees to enter into the contract. Appellees also sued Kiam Pennington, to whom they allegedly paid a deposit for Iverson's appearance, and Moore. Moore was never served and was nonsuited, and appellees obtained a default judgment against Pennington, who is not a party to this appeal.

On March 22, 2012, Iverson filed a pro se original answer in which he asserted a general denial and various affirmative defenses to appellees' claims. That same day, the trial court issued a pre-trial order which set the case for a non-jury trial on June 11, 2012. When Iverson failed to appear for trial on June 11, 2012, the court heard evidence and rendered a default judgment in appellees' favor for $495,058.29, plus attorney's fees and court costs. Iverson timely filed a motion for new trial alleging that the default judgment should be set aside because he did not receive notice of the trial setting. After a hearing, the court denied the motion. This appeal followed.

In his fourth issue, Iverson contends the evidence is legally insufficient to support the default judgment as to liability. We agree.

If a no-answer default judgment is granted, the defendant who did not answer is deemed to have admitted the facts properly pleaded and the justice of his opponent's claims. *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979). A post-answer default judgment, however, constitutes neither an abandonment of the defendant's answer, nor an implied confession of any issues. *Id.* In such cases, judgment cannot be entered on the pleadings. *Id.* Instead, the party seeking judgment must offer evidence and prove all aspects of his case. *Bradley Motors, Inc. v. Mackey*, 878 S.W.2d 140, 141 (Tex. 1994); *Stoner*, 578 S.W.2d at 682. Here, because Iverson

filed an answer, appellees had the burden to prove both liability and damages. *See Armstrong v. Benavides*, 180 S.W.3d 359, 362 (Tex. App.—Dallas 2005, no pet.).

A party against whom a post-answer default judgment has been granted may challenge the legal sufficiency of the evidence to support the judgment on appeal. *See Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997) (per curiam). The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Armstrong*, 180 S.W.3d at 362. In our review of the evidence, we credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.* If there is more than a scintilla of evidence to support the verdict, we uphold the judgment. Evidence is no more than a scintilla when it is so weak as to do no more than create a mere surmise or suspicion of the fact's existence. *Id.*

Appellees' first cause of action against Iverson was for breach of contract. Among the elements necessary to succeed on their breach of contract claim, appellees needed to present evidence of a valid contract existing between them and Iverson. *See Schindler v. Baumann*, 272 S.W.3d 793, 795 (Tex. App.—Dallas 2008, no pet.). The elements required for formation of a valid contract are 1) an offer, 2) acceptance in strict compliance with the terms of the offer, 3) a meeting of the minds, 4) each party's consent to the terms, and 5) execution and delivery of the contract with the intent that it be mutual and binding. *Thornton v. AT&T Adver., L.P.*, 390 S.W.3d 702, 705 (Tex. App.—Dallas 2012, no pet.). The material terms of a contract must be agreed upon before a court can enforce a contract. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Effel v. McGarry*, 339 S.W.3d 789, 793 (Tex. App.—Dallas 2011, pet. denied).

In proving up their default judgment, appellees presented various contracts with third parties in support of their damages, including contracts for security, bouncers, models, DJs, and a

photographer at the event. They did not, however, produce any substantive testimony about the formation of the contract with Iverson or its material terms. Moreover, they did not introduce the alleged written contract between them and Iverson's agent that is the basis for their lawsuit. Jasmine Aponte, who does business as appellee Dolce Marketing Group, was asked if, on about January 13, 2010, she and appellee DG1 had cause to enter into a contract for the personal services of Iverson. She replied in the affirmative. Aponte stated that appellees put up money to have Iverson appear at a party in Dallas during the NBA All Star weekend. She further stated that, "in order to get the contract going," appellees deposited $12,500 into Pennington's account.

There was no testimony about how the alleged contract with Iverson, signed by his agent Moore, came to be formed or what its material terms were. We conclude there is no more than a scintilla of evidence to show that a valid contract for Iverson's services existed. *Cf. Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (in suit for breach of credit agreement, where no copy of credit agreement was submitted, summary judgment was improper because evidence was insufficient to establish terms of valid contract as matter of law).

In addition to their contract claim, appellees alleged that Iverson committed fraud and fraud in the inducement by fraudulently inducing appellees to enter into the contract knowing it would not be performed. Appellees further asserted Iverson made false statements to them in an effort to conceal the actual status of his appearance.[1] The elements of appellees' fraud claim are: a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon, which was relied upon, and which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d

---

[1] In their pleadings, appellees make this allegation under an enumerated cause of action for "fraudulent concealment." Fraudulent concealment is an affirmative defense to statutes of limitations and not an independent cause of action. *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 10 (Tex. App.—San Antonio 2005, pet. denied).

670, 688 (Tex. 1990). Fraudulent inducement is a species of fraud that arises in the context of a contract; the elements of fraud must be established as they relate to a contract between the parties. *Brauss v. Triple M Holding GmbH*, 411 S.W.3d 614, 622 (Tex. App.—Dallas 2013, pet. denied). A plaintiff cannot assert a fraudulent inducement claim when there is no contract. *Haase v. Glazner*, 62 S.W.3d 795, 800 (Tex. 2001).

Appellees' fraud claims are predicated on the existence of a valid contract between them and Iverson. As appellees did not prove the existence of a valid contract, there is legally insufficient evidence to support a finding that Iverson is liable for fraud in connection with the contract. In addition, there is no evidence that any misrepresentations made were known to be false when made or were asserted without knowledge of the truth. Because we conclude appellees did not present legally sufficient evidence to establish Iverson's liability for either of the causes of action they alleged, we resolve Iverson's fourth issue in his favor.

We reverse the trial court's default judgment against Iverson and remand appellees' causes of action against him to the trial court for further proceedings. In all other respects, we affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

121230F.P05

–5–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALLEN IVERSON, Appellant

No. 05-12-01230-CV      V.

DOLCE MARKETING GROUP AND DG1
ENT, LLC, Appellees

On Appeal from the 44th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-06058.
Opinion delivered by Justice Brown.
Justices Moseley and Lang participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** the trial court's default judgment against appellant Allen Iverson and **REMAND** appellees' causes of action against Iverson to the trial court for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellant ALLEN IVERSON recover his costs of this appeal from appellees DOLCE MARKETING GROUP AND DG1 ENT, LLC.

Judgment entered this 28th day of March, 2014.

/Ada Brown/

ADA BROWN
JUSTICE