**Affirmed in part and Reversed and Remanded in part and Opinion Filed April 26, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00630-CV**

**LINDA DOUGLAS, Appellant**
**V.**
**DALLAS PERFORMANCE, LLC, Appellee**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-03688-E**

## MEMORANDUM OPINION

Before Justices Myers, Molberg, and Garcia
Opinion by Justice Myers

Linda Douglas appeals the take nothing judgment based on the jury's verdict on her claims for conversion and "wrongful detention"[1] of her vehicle by appellee Dallas Performance, LLC, and her claim for attorney's fees under section 70.008 of the Property Code. Dallas Performance brings a cross-appeal of the trial court's take-nothing judgment on its claim for attorney's fees. We reverse the trial court's judgment on Douglas's claims for conversion, wrongful detention, and for attorney's

---

[1] By "wrongful detention," Douglas appears to mean the tort of trespass to chattels.

fees under section 70.008. We affirm the trial court's judgment that Dallas Performance take nothing on its claims for attorney's fees. We remand the case to the trial court for further proceedings.

## FACTUAL BACKGROUND[2]

Linda Douglas owns a 2004 Corvette. She decided she wanted the car to sound bigger. In December 2013, she took the car to Dallas Performance, owned by Taylor Sims, to have a new camshaft put in. The car also had low oil pressure and made a ticking sound. Douglas told Dallas Performance she wanted the camshaft changed. Dallas Performance was concerned about the other motor problems the car was having and wanted to remove the engine, tear it down, and find what was wrong with it. Douglas told Dallas Performance she could not afford that and just to change the cam shaft. Douglas and Dallas Performance eventually agreed Dallas Performance could also do some work on the pistons and rings but not tear down the motor. Dallas Performance agreed to do the work but said it could not warranty the work if it could not tear down the motor to find the problem. Douglas left the car with Dallas Performance. The back of Dallas Performance's invoices said Dallas Performance would charge $40 per day for storage of vehicles left at Dallas Performance more than three days after notification of job completion. Dallas Performance did the agreed work to change the camshaft and work on the pistons

---

[2] For further information on the case, see the opinion from the earlier appeal of this case, *Douglas v. Sims*, No. 05-17-01187-CV, 2019 WL 926133 (Tex. App.—Dallas Feb. 26, 2019, no pet.) (mem. op.).

and rings, but it also, without notifying Douglas, tore down the motor, fixed it, and put it back together.

In February 2014, Dallas Performance notified Douglas that the car was repaired and told her the bill for the work on the camshaft, pistons, and rings, which was the work Douglas had authorized, was $4,791.56. Dallas Performance agreed Douglas could make unspecified monthly payments to pay for the repairs and that storage charges would be $50 per week; Douglas said "No problem." Douglas made some payments but then got sick. When she asked Dallas Performance how much she owed, Dallas Performance presented her with a bill for the unapproved motor work, which was $7,077.64. On September 11, 2015, Douglas made a payment that brought her total payments to $4,820, which was more than she owed for the repairs she had authorized, but not enough to pay the storage fees to that point or pay for the unauthorized repairs. Douglas demanded Dallas Performance return the car, but Dallas Performance refused.

## First Trial

Douglas sued Dallas Performance for various claims including conversion and wrongful detention. Douglas sought the return of the car, damages for the loss of use of the car between September 11, 2015 and the trial, and attorney's fees. Dallas Performance brought counterclaims, including a quantum meruit claim for the unauthorized motor work, a breach-of-contract claim for Douglas's failure to pay for the unauthorized motor work and the storage fees, and a claim for attorney's fees.

As defenses to Douglas's claims for conversion and wrongful detention, Dallas Performance alleged Douglas's claims violated the statute of limitations.

The jury found against Douglas on all her claims. On Dallas Performance's counterclaim for breach of contract for the storage fees, the jury found Douglas agreed to pay storage fees, that she failed to comply with that agreement, and that she failed to pay Dallas Performance $9,000 for the storage fees. The jury also found Douglas did not agree to pay Dallas Performance for the additional motor work, but the jury found the elements of quantum meruit and damages to Dallas Performance of $3,200. The jury found Dallas Performance's reasonable and necessary attorney's fees were $8,750. The trial court rendered judgment that Douglas take nothing and that Dallas Performance recover damages of $3,200 for quantum meruit, $9,000 for breach of contract, and $8,750 for attorney's fees.

## First Appeal

Douglas appealed the trial court's judgment to this Court. On Dallas Performance's quantum meruit claim, we determined there was no evidence to support the jury's verdict because there was no evidence of the element that Dallas Performance reasonably notified Douglas that it was performing the motor repair work or expected Douglas to pay for the work. *Douglas*, 2019 WL 926133, at *6. We rendered judgment that Dallas Performance take nothing on its quantum meruit claim. *Id.*

–4–

On Douglas's conversion and wrongful-detention claims, we determined Douglas conclusively established she owned the car, that Dallas Performance had possession of the car, and that she had demanded the return of the of the car. *Id.* We said the jury's finding that Dallas Performance had not converted the car meant:

> the jury necessarily found Dallas Performance's possession of the car was not 'unlawful,' 'without authorization,' 'inconsistent with Douglas's rights,' or an 'impairment or exclusion' of Douglas's right to possess and control the car. Based on the pleadings and evidence at trial, this finding could have been based only on Dallas Performance's contention it had the right to possess the car until Douglas paid for all the work.

*Id.* at *7. We then said Dallas Performance's failure to establish it was entitled to recover for the unauthorized motor work "directly impacts Dallas Performance's assertion it had a valid lien on the car, an issue crucial to the jury's determination of whether Dallas Performance converted or wrongfully detained the car." *Id.* at *8, slip op. at 15. Douglas asked us to render judgment in her favor on her claims for conversion and wrongful detention. We declined to do so because, as the jury charge was structured, the jury's "No" answer on conversion meant the jury did not answer questions on Dallas Performance's limitations defense, the value of the car on the date of the conversion, whether the car should be returned to Douglas, and whether Douglas was entitled to exemplary damages. *Id.* We reversed the take-nothing judgment on conversion and wrongful detention and remanded the case for a new trial in the interest of justice. *Id.* at *8.

On Dallas Performance's counterclaim for breach of contract for storage fees, the jury found Douglas agreed to pay storage fees, did not comply with that agreement, and that $9,000 was the amount she failed to pay under the agreement. We held:

> Douglas's agreement to pay storage fees terminated when she made the last payment for the camshaft work on September 11, 2015. . . . There were eighty-one weeks and one day between February 20, 2014 [the date storage fees began] and September 11, 2015. Accordingly, Douglas owed storage fees of $4,057.14.

*Id.* at *10. We concluded the evidence was legally insufficient to support the award of $9,000 for breach of contract, and we suggested a remittitur—which Dallas Performance accepted—reducing Dallas Performance's breach-of-contract damages on the storage fees to $4,057.14. *Id.*; *Douglas v. Sims*, No. 05-17-01187-CV, 2019 WL 1198394 (Tex. App.—Dallas Mar. 14, 2019) (mem. op.) (supplemental opinion after Dallas Performance accepted suggestion of remittitur).

On Dallas Performance's claim for attorney's fees, we reversed the award of attorney's fees because we rendered take-nothing on Dallas Performance's quantum meruit claim and had reduced the damages on the breach of contract claim by more than half. We ordered the trial court to determine the amount of attorney's fees. *Douglas*, 2019 WL 926133 at *11.

**Second Trial**

Following remand of the case, the trial court presided over a second jury trial. Douglas testified Dallas Performance still refused to release the car to her. Dallas

–6–

Performance's witnesses testified that it was entitled to continue holding the car because Douglas had not paid the storage fees. Dallas Performance did not request submission of any affirmative defenses to the conversion and wrongful-detention claims. At the end of the trial, the jury found Dallas Performance did not convert or wrongfully detain the car. The jury did not answer questions on conversion damages concerning the value of the vehicle on September 11, 2015, loss of use of the vehicle since September 11, 2015, malice, or exemplary damages. In Jury Question 5, the jury was asked, "Is Dallas Performance wrongfully detaining the Car?" and the jury answered "No." The jury was asked about attorney's fees for both Douglas and Dallas Performance and answered "0" for all questions about attorney's fees.

Douglas timely filed a motion for new trial arguing the evidence was "legally and factually insufficient to support the jury's finding[s]" on her claims for conversion and wrongful detention. Douglas asserted that the only issue was whether Dallas Performance's possession of her car was wrongful, and she asserted the evidence conclusively established Dallas Performance's possession was wrongful. She argued that when she finished paying the amount of the authorized repairs, Dallas Performance's mechanic's lien ended, and it no longer had a right to possess her car. She also asserted she established the amount of her damages and attorney's fees. The motion for new trial was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c).

## Second Appeal

Both Douglas and Dallas Performance filed timely notices of appeal.

Douglas brings four issues contending the trial court erred by (1) not rendering judgment for her on her claims for conversion and wrongful detention, (2) not rendering judgment for her loss-of-use damages and attorney's fees, (3) not granting her the alternative relief of a new trial, and (4) submitting a question to the jury on Dallas Performance's attorney's fees incurred in the second trial.

Dallas Performance brings one cross-issue contending the trial court should have awarded it its attorney's fees from the first and second trials.

## CONVERSION AND WRONGFUL DETENTION

As we stated in the first appeal of this case, "Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with, the owner's rights." *Douglas*, 2019 WL 926133, at *6. Its elements are, "(1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Id.*

Douglas's "wrongful detention" of personal property claim appears to be a claim of trespass to chattels. "A trespass to chattels is a wrongful interference with

or injury to property that causes actual damage to the property or deprives the owner of its use for a substantial period of time." *Armstrong v. Benavides*, 180 S.W.3d 359, 363 (Tex. App.—Dallas 2005, no pet.); *see also Omnibus Int'l, Inc. v. AT&T, Inc.*, 111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, no pet.) ("To interfere wrongfully with the use or possession of property is a trespass to chattels. For liability to attach, causing *actual damage* to the property or *depriving the owner of its use for a substantial period* must accompany the wrongful interference." (citation omitted)).

In this case, Douglas conclusively established that she met elements (1), (3), and (4) of her conversion claim because proved she owned the car, she demanded the return of the car, and Dallas Performance refused to return the car. *See Douglas*, 2019 WL 926133, at *6. On her wrongful-detention claim, Douglas conclusively proved Dallas Performance interfered with her possession of the car and deprived her of its use for a substantial period of time. The only question is whether Dallas Performance's interference and assuming and exercising of control over the car after September 11, 2015 were wrongful, unlawful, and without authorization. The only authorization Dallas Performance asserted it had for retaining possession of the car after Douglas had paid for the authorized repairs was its mechanic's lien.

# MECHANIC'S LIEN

Dallas Performance asserted it was entitled to keep possession of Douglas's car until she paid the storage fees pursuant to section 70.001(a) of the Property Code:[3]

> (a) A worker in this state who by labor repairs an article, including a vehicle, . . . may retain possession of the article until:
>
> (1) the amount due under the contract for the repairs is paid . . . .

TEX. PROP. CODE ANN. § 70.001(a). The lien is released when the worker receives payment for the amounts due under subsection (a) or when the worker releases possession of the vehicle. *Id.* § 70.001(b-1).

Douglas argues the storage of the car was not part of the repairs, so the storage fees are not secured by the mechanic's lien. Dallas Performance argues that the contract for the repairs provided for storage fees, so those fees are part of "the amount due under the contract for repairs," and Douglas had not paid "the amount due under the contract for repairs" when she finished paying for the repairs on September 11, 2015, but still owed over $4,000 for storage fees.

We did not in the first appeal—and the parties do not in this appeal—expressly address this statutory construction matter. Our opinion from the first appeal stated, "Douglas's agreement to pay storage fees terminated when she made the last

---

[3] There is a provision in the Property Code for a garageman's lien, section 70.003(c), but Dallas Performance did not assert in the trial court and does not argue on appeal that the statutory garageman's lien applies in this case.

payment for the camshaft work on September 11, 2015." *Douglas*, at *10, slip op. at 19. But that statement goes to what the parties' agreement was for allowing Dallas Performance to charge storage fees; our opinion did not address whether the law allows Dallas Performance to keep possession of the car until the post-repair storage fees are paid.

The Eastland Court of Appeals dealt with a similar situation in *Allstar Refinishing & Collision Center, Inc. v. Rosas*, No. 11-07-00268-CV, 2009 WL 481885, at *2 (Tex. App.—Eastland Feb. 26, 2009, no pet.) (mem. op.). In that case, Rosas took her car to Allstar for repairs. Allstar rented Rosas a car while her car was being repaired. Rosas transferred the insurance company's payment to Allstar, leaving a balance of $500 for the repairs to her car. The rental car was damaged while in Rosas's possession. When Rosas returned the rental car and gave Allstar a check for $500 for the remaining balance due on her car, Allstar refused to return her car to her because she owed money for the damaged rental car. Rosas sued for conversion, and the trial court granted her motion for summary judgment on her claim for conversion. On appeal, Allstar argued that section 70.001 permitted it to retain Rosas's vehicle until she paid both the repair bill for her vehicle and the expenses assessed for the rental car in full. The court of appeals disagreed:

> Subsection (a)(1) is the applicable provision of the statute because Allstar specified the amount due for the repairs to be made to Rosas's vehicle. This provision states that the worker may retain possession of the article "until the amount due under the contract *for the repairs* is paid" (emphasis added). The expenses claimed by Allstar for the costs

–11–

of the rental vehicle, including costs for damages allegedly occurring to the rental vehicle, do not constitute costs "for the repairs" of the vehicle that is the subject of the statutory lien. Accordingly, we disagree with Allstar's construction of the statute.

*Id.* at *2.

In this case, the invoice provide that storage fees would be charged beginning three days after the customer was notified that the repairs were completed. Because the fees were not incurred until after the repairs were completed, the storage fees were not part of "the amount due under the contract *for the repairs*." PROP. § 70.001(a)(1) (emphasis added); *see Rosas*, 2009 WL 481885, at *2. Therefore, the post-repair storage fees were not secured by the mechanic's lien.

The evidence conclusively established that Dallas Performance had no right to maintain possession of Douglas's vehicle after September 15, 2015, when she finished paying for the authorized repairs. Dallas Performance's refusal to return Douglas's vehicle to her after she demanded they do so constituted an unlawful and unauthorized assumption and exercise of control over the vehicle to the exclusion of Douglas's rights as an owner. Thus, Douglas conclusively established Dallas Performance committed the tort of conversion. Douglas also conclusively established Dallas Performance wrongfully interfered with the car depriving Douglas of the use of the car for a substantial period of time. Thus Douglas also conclusively established trespass to chattels. *See Armstrong*, 180 S.W.3d at 363.

Next, we must determine the appropriate disposition of these causes of action. The usual measure of damages for conversion is the fair market value of the property

at the time and place of conversion. *Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 706 (Tex. App.—Dallas 2012, no pet.). Alternatively, the plaintiff can seek the return of the property and damages for its loss of use during the time of its detention. *Id.* Damages are limited to the amount necessary to compensate the plaintiff for the actual losses or injuries sustained as a natural and proximate result of the defendant's conversion. *Id.* Loss-of-use damages "are typically measured by the reasonable cost to rent a replacement, although actual rental of such replacement is not necessary." *Wolf v. Starr*, 617 S.W.3d 898, 907 (Tex. App.—El Paso 2020, no pet.). The plaintiff must elect to recover the property itself or the fair market value in damages. *R.J. Suarez Enters. Inc. v. PNYX L.P.*, 380 S.W.3d 238, 243 (Tex. App.—Dallas 2012, no pet.). The plaintiff may not change its election of damages for conversion after the case has been submitted to the fact-finder. *Id.* Further, this election is subservient to the doctrine that the object is to compensate for the injury, and the trial court must be given the discretion required to fashion an equitable remedy. *Id.* If allowing the plaintiff to elect to recover the converted property itself will over-compensate him for his injury, then the trial court should take the election away from the plaintiff and limit the recovery to the fair market value of the property at the time and place of the conversion. *Id.*

Trespass to chattels differs from conversion in the measure of damages recoverable. "On a trespass to chattels claim, the plaintiff can recover only the diminished value of his property and the damage to his interest in its possession or

use." *Simmonds v. TDCJ*, No. 10-07-00361-CV, 2010 WL 654498, at *7 (Tex. App.—Waco Feb. 24, 2010, no pet.) (mem. op.).

In this case, Douglas did not make, nor was she asked to make, an election as to damages. Douglas testified she wanted the car returned to her. She also presented two measures of damages, the value of the vehicle, which she testified she learned from Kelley's Blue Book was $16,500, and loss of use, $15,860. Concerning damages for loss of use, Douglas, as of the day of trial, had been wrongfully deprived of the use of her car for 1,586 days. Douglas did not testify to any out-of-pocket expenses she incurred from the loss of use of the car for over four years. During that time, she "had to rely on other people or take the bus or just not have transportation." She computed the loss-of-use damages by determining that it cost a minimum of $27 to $30 per day to rent a car, and she testified, "I thought $10 a day would be a fair . . . estimate. I took that, multiplied that by the days that I was without the car, and came up with that figure." Thus, $15,860 represents loss-of-use damages of ten dollars per day for her being wrongfully deprived of her car for 1,586 days.

Douglas requests that we (1) render judgment ordering Dallas Performance to deliver possession of the car to her or to pay her the value of the car, $16,500, (2) render judgment awarding Douglas damages of $15,860 for loss of use of the car, and (3) render judgment awarding Douglas her attorney's fees of $15,000 through trial and $25,000 for attorney's fees on appeal. In the alternative, Douglas requests that we grant her a new trial. In this case, we conclude that a new trial, rather than

–14–

rendition of judgment is appropriate. In the first appeal of this case, we concluded rendition was not appropriate because the jury charge instructed the jurors not to answer questions concerning Douglas's actual damages, Dallas Performance's malice, and exemplary damages if the jury found that Dallas Performance did not convert or wrongfully detain Douglas's car. We stated:

> Douglas requests that we render judgment in her favor on her conversion and wrongful detention claims and order that Dallas Performance return the car or, alternatively, pay damages for the lost value of the car. However, the jury was instructed that if it found Dallas Performance neither converted nor wrongfully detained the car, it should not answer questions about the defenses asserted by Dallas Performance to those claims, the value of the car on the date of any conversion, whether the car should be returned to Douglas, and whether Douglas was entitled to exemplary damages. Accordingly, we cannot conclude that rendition is the appropriate remedy in this case.

*Douglas*, 2019 WL 926133, at \*8. Following retrial, a jury again found Dallas Performance did not convert or wrongfully detain the car. Again, the jury charge instructed the jurors not to answer questions about the value of the car, damages for loss of use, malice, or exemplary damages. As in the first appeal, we conclude remand, rather than rendition is appropriate. *See Hebert Acquisitions, LLC v. Tremur Consulting Contractors, Inc.*, No. 03-09-00385-CV, 2011 WL 350466, at \*5 (Tex. App.—Austin Feb. 4, 2011, no pet.) (mem. op.) ("The mere fact that evidence is uncontroverted, however, does not make it conclusive."); *see also* TEX. R. APP. P. 44.1(b) ("The trial court may not order a separate trial solely on unliquidated damages if liability is contested.").

Douglas claimed attorney's fees pursuant to Property Code section 70.008, and she contends the trial court erred by not rendering judgment for her attorney's fees. Section 70.008 provides, "The court in a suit concerning possession of a motor vehicle . . . and a debt due on it may award reasonable attorney's fees to the prevailing party." PROP. § 70.008. Douglas's claim for attorney's fees is based on her prevailing on her claims for conversion and trespass to chattels. Because we are remanding Douglas's claims "concerning possession of a motor vehicle," we also remand her claim for attorney's under section 70.008.

We overrule Douglas's first and second issues, but we sustain Douglas's third issue asserting the trial court erred in failing to grant Douglas's request for a new trial.

### DALLAS PERFORMANCE'S ATTORNEY'S FEES

In her fourth issue, Douglas contends the trial court erred in submitting Dallas Performance's request for attorney's fees incurred in the second trial. Douglas presented neither argument nor authority in support of this issue. Her brief says the issue is "unbriefed." Rule of Appellate Procedure 38.1(i) requires an appellant's brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Because Douglas did not present argument in support of the issue, it is waived. *See In re S.L.*, No. 05-21-00874-CV, 2022 WL 896874, at *3 (Tex. App.—Dallas Mar. 28, 2022, no pet. h.) (per curiam) (mem. op.) ("When a party fails to adequately brief

–16–

a complaint, he waives the issue on appeal."); *Hogan v. Aspire Fin., Inc.*, No. 05-19-00385-CV, 2021 WL 2176929, at *3 (Tex. App.—Dallas May 28, 2021, pet. denied) (mem. op.) ("Because Hogan's issues are bare assertions of error, without supporting argument or authority, we conclude she has waived our review of her complaints."); *see also Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987) ("[T]he burden is on a party appealing from a trial court judgment to show that the judgment is erroneous in order to obtain a reversal.").

Even if any error were not waived, it would not be reversible. Neither the jury nor the trial court awarded Dallas Performance any attorney's fees for the second trial. Therefore, any error by the trial court in submitting the question to the jury probably did not cause the rendition of an improper judgment and is not reversible. *See* TEX. R. APP. P. 441(a). We overrule Douglas's fourth issue.

Dallas Performance's fourth "issue" in its brief is a cross-issue contending the question of its attorney's fees for both trials should be remanded to the trial court. The jury awarded Dallas Performance "$0" for Dallas Performance's attorney's fees, and the trial court rendered judgment in accordance with the jury's verdict. Douglas asserts Dallas Performance did not preserve this issue for appellate review; we agree with Douglas.

Dallas Performance argues the jury had to award it at least some attorney's fees. This argument challenges the legal and factual sufficiency of the evidence to support the jury's verdict. To preserve a legal sufficiency challenge for appeal after

–17–

a jury trial, the party must raise the specific complaint in the trial court by: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the jury question; (4) a motion to disregard the jury's finding on a vital fact issue; or (5) a motion for new trial. *THB Constr., LLC v. Holt Tex., Ltd.*, No. 05-20-00020-CV, 2022 WL 123105, at *5 (Tex. App.—Dallas Jan. 13, 2022, no pet.) (mem. op.). A party must preserve an issue of factual insufficiency of the evidence to support a jury finding by filing a motion for new trial. Tex. R. Civ. P. 324(b)(2); *Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex. 1991). Dallas Performance did not file a motion for directed verdict, a motion for judgment notwithstanding the verdict, or a motion to disregard the jury's findings on attorney's fees. Nor did Dallas Performance file a motion for new trial. Therefore, Dallas Performance has not preserved its challenge to the legal or factual sufficiency of the evidence to support the jury's verdict. We overrule Dallas Performance's fourth issue.

## CONCLUSION

We reverse the trial court's judgment as to Douglas's claims for conversion, wrongful detention, and attorney's fees under section 70.008 of the Property Code, and we otherwise affirm the trial court's judgment.

We remand the cause to the trial court for further proceedings consistent with this opinion.

200630f.p05

/Lana Myers//
LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

| | |
|---|---|
| LINDA DOUGLAS, Appellant | On Appeal from the County Court at Law No. 5, Dallas County, Texas |
| No. 05-20-00630-CV　　V. | Trial Court Cause No. CC-16-03688-E. |
| DALLAS PERFORMANCE, LLC, Appellee | Opinion delivered by Justice Myers. Justices Molberg and Garcia participating. |

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment that appellant LINDA DOUGLAS take nothing on her claims for conversion, wrongful detention, and for attorney's fees under Texas Property Code section 70.008. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant LINDA DOUGLAS recover her costs of this appeal from appellee DALLAS PERFORMANCE, LLC.

Judgment entered this 26th day of April, 2022.